(No. 12080.—Reversed and remanded.)

THE VILLAGE OF OAK PARK, Appellee, *vs.* THE CHICAGO AND WEST TOWNS RAILWAY COMPANY *et al.* Appellants.

*Opinion filed October 21, 1918—Rehearing denied Dec. 5, 1918.*

1. SPECIAL ASSESSMENTS—*when variance between resolution and ordinance is willful and substantial.* Where the resolution for the paving and curbing of a system of streets provides for a combined curb and gutter throughout the improvement but the ordinance provides for such curb and gutter on all the streets but one, the variance must be regarded as willful and substantial.

2. SAME—*when switch-track ordinance does not obligate street railway company to pave street.* Where an ordinance for switch-track connection between a street railway and a steam railroad at grade provides that the street railway company shall pave the street between its tracks and for two feet each side thereof, but permission is given to elevate the tracks in case the tracks of the steam railroad are elevated, without making any provision for paving beneath the elevated structure, the elevation of the tracks relieves the street railway company from paving the street, and the cost thereof is properly assessed to property benefited.

3. SAME—*what does not show that the ordinance is oppressive.* The fact that the roadway to be improved on a system of streets is of the uniform width of thirty feet, whereas one of the streets is only fifty feet wide as compared to a width of eighty feet for the other streets, does not show that the improvement ordinance is unreasonable and oppressive, as the question of the necessity for a roadway of such width is one of fact, which is not necessarily governed by the width of the street.

4. SAME—*lots occupied by car barns may be assessed to the extent of benefits for such use.* Lots owned by a street railway company and occupied by car barns, offices, power plant and storage tracks may be assessed for the paving of an adjacent street to the extent the lots are benefited for the use being made of them. (*City of Chicago.* v. *Chicago Railways Co.* 282 Ill. 383, explained.)

APPEAL from the County Court of Cook county; the Hon. J. H. WILLIAMS, Judge, presiding.

McEWEN, WEISSENBACH & SHRIMSKI, (GEORGE A. MASON, of counsel,) for appellants.

B. F. LANGWORTHY, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

This is an appeal from a judgment of the county court of Cook county confirming a special assessment against the property of appellants for the cost of constructing a pavement on a system of streets in the village of Oak Park.

Appellee passed an ordinance for paving with brick North boulevard from the east line of Ridgeland avenue to the west line of Lombard avenue, and Cuyler avenue from the south line of Lake street to the north line of North boulevard, and Harvey avenue from the south line of Lake street to a line four feet north of the north line of North boulevard. Appellee filed a petition for the confirmation of a special assessment to defray the cost of the proposed improvement. Legal objections were filed and overruled. On the hearing of the question of benefits the court reduced the assessment against private property and apportioned twenty per cent of the cost as a public benefit, and judgment was entered accordingly.

It is first contended that there is a willful and substantial variance between the first resolution and the ordinance as to the exclusion of the street railway right of way and as to the construction of a combined curb and gutter. The language of the resolution in this respect is as follows: "That the roadways of a system of streets as follows, to-wit: North boulevard from the east line of Ridgeland avenue produced from the north to the west line of Lombard avenue produced from the north, and Cuyler avenue from the north curb line of North boulevard to the southerly line of Lake street; Harvey avenue from a line four (4) feet

north of and parallel with the north line of North boule-
vard to the southerly line of Lake street, (except the in-
tersection of Harvey avenue and North boulevard and also
except street railway rights of way thereon between said
points, which rights of way are by the ordinance granting
them required to be paved and kept in repair by the com-
panies owning, operating and controlling the same,) be im-
proved by adjusting sewer man-holes,  *  *  *  construct-
ing a granite concrete combined curb and gutter on cinders,"
etc.   Appellants insist that a fair reading of the resolution
discloses that it was intended to exclude from the improve-
ment only the right of way of the street railway company
on Harvey avenue, whereas the ordinance expressly excludes
all right of way space on Cuyler avenue, North boulevard
and Harvey avenue.   This objection is exceedingly tech-
nical and without merit.   The resolution plainly discloses
that it was intended to exclude from the improvement the
exact right of way described in the ordinance.

The contention that there is a willful and substantial
variance between the resolution and the ordinance with re-
spect to the construction of a combined curb and gutter is
more serious.   The resolution provides for the construc-
tion of a concrete combined curb and gutter throughout the
whole line of the improvement, whereas the ordinance pro-
vides for the construction of a combined curb and gutter
throughout the improvement except along Harvey avenue.
It developed on the hearing of the question of benefits that
the reason for this exception contained in the ordinance
was because there was a good combined curb and gutter
on Harvey avenue which could be used in connection with
the proposed improvement.   Counsel for appellee concedes
that there is this variance between the resolution and the
ordinance but insists that it is neither willful nor substan-
tial, and contends that anyone interested could take a map
and the engineer's estimate and figure out that it was not
contemplated that a combined curb and gutter should be

constructed throughout the whole of the improvement and could ascertain the exact extent from the engineer's estimate of the amount of the combined curb and gutter proposed to be constructed, and by going to the system of streets which it was proposed to improve could see from the condition of the combined curb and gutter on Harvey avenue that it was intended to be left undisturbed, and that its extent would correspond exactly with the amount of combined curb and gutter omitted from the engineer's estimate which under the resolution would have been necessary to complete the improvement. The property owner is not required to go to these pains to determine the scope and character of the proposed improvement. This variance must be held to be both willful and substantial. As was said in *Smith* v. *City of Chicago*, 214 Ill. 155, the change made in the improvement was not the result of inadvertence but was clearly designed and intentional, and would result in the improvement being substantially different from that determined upon by the board after those interested had been heard at the public meeting. The court erred in not sustaining this legal objection.

As the judgment must be reversed for the above error it will not be necessary for us to consider all the other points raised, as some of them are not likely to arise again. Some questions raised, however, will come up for determination upon another hearing and those will be decided.

On the hearing of the question of benefits appellants introduced in evidence a switch-track ordinance which granted the right to construct, maintain and operate a switch track in North boulevard to be connected with the Chicago and Northwestern Railway Company's tracks, the rails to be at the grade of North boulevard and the tracks to be made passable at all times and in all directions, provided that if the railway company should elevate its tracks the switch track should also be elevated to conform to the elevation of the main tracks of the company, the elevation to be con-

structed in such a manner and with such materials as the
town should require and in such a manner as to permit car-
riages and other vehicles and pedestrians to pass and re-
pass below the track. One section of the ordinance pro-
vided that the grantee of the privilege should pave and keep
paved the space between the rails of said track, and for a
space of two feet on the outside of each rail of said track,
with such material and in such a manner as the town
might direct. Since the granting of this privilege the Chi-
cago and Northwestern Railway Company's tracks have
been elevated, and the switch track in question has also
been elevated in compliance with the terms of this ordinance.
The improvement ordinance did not exclude from the pave-
ment on North boulevard the space beneath the elevated
switch track, and it is contended that the ordinance is un-
reasonable, oppressive and void because it included work to
be done by the grantee of the switch-track franchise. The
terms of this ordinance require that while the switch track
remained on the ground and at the grade of North boule-
vard, the owner of the license must pave between the rails
and over the space of two feet on the outside of each rail.
While it is true that the terms of a license such as this are
construed most strongly in favor of the grantor and all
questions of doubt will be resolved in favor of the public,
it is apparent that the obligation to pave no longer rests
on the grantee or owner of the license after the elevation
of the switch track, as it then became impossible to pave
between the rails and the space for two feet outside of each
rail. The separation of the grades relieved the owner of
the license of the obligation to pave any part of the street.
This obligation might easily have been imposed by the ordi-
nance in case of elevation of the tracks, but it was not done.
This portion of the street was properly provided to be paved
at the expense of the parties benefited by the improvement.

It is also contended that under the circumstances shown
by the record the ordinance is in other respects unreason-

able, oppressive and void, in that it provides for a roadway thirty feet in width along North boulevard, which is a street only fifty feet wide and with a stone retaining wall of the Chicago and Northwestern Railway Company extending fourteen feet in height along the south line of the roadway. Cuyler avenue and Harvey avenue are each eighty feet in width, and the ordinance provides for a roadway in these streets also of thirty feet in width. The mere fact that North boulevard is a street of less width than the other streets of this system does not, of itself, signify that the roadway in this street should be of any less width than that of other streets. The question of the necessity for a roadway of this width is one of fact and is not necessarily governed by the width of the street itself.

The Chicago and West Towns Railway Company owned lots abutting on Cuyler and Harvey avenues and North boulevard which were assessed benefits. This ground is occupied with car-barns, offices, a power plant and storage yards of the street railway company. Tracks lead into this property from the street car lines on Harvey avenue and North boulevard and also from Cuyler avenue. It is contended that as the testimony disclosed that this property of the street railway company is used exclusively for street railway purposes and is restricted by law to a particular use, benefits must be measured in relation to such use, and that under the holding in *City of Chicago* v. *Chicago Railways Co.* 282 Ill. 383, this property cannot be assessed. It was held in that case that the terminal property of a street railway company could not be assessed for public benefits on the theory that it was benefited because it could be disposed of and devoted to some other use. There is no such question in this case. Each witness testified that the property was benefited for the use that was then being made of it. In the case relied on the judgment was reversed, not because it was not possible to prove any benefits measured in relation to the use which was being made of the prop-

erty, but because it was evident that the court found that the property was benefited in twice the amount testified to by the witnesses. It is proper, if it can be done, to show that by reason of this improvement the property of the street railway company is benefited for the use it is making of the property.

For the error indicated the judgment of the county court is reversed and the cause remanded.

*Reversed and remanded.*

(No. 12248.—Reversed and remanded.)
Adelaide M. Shea, Appellee, *vs.* Robert M. Sweitzer, County Clerk, *et al.* Appellants.

*Opinion filed October 21, 1918—Rehearing denied Dec. 6, 1918.*